UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE,<br><br>                       Plaintiff,<br><br>-against-<br><br>AZA LEFKOWITZ, M.D., and<br>ADVANCED DERMATOLOGY, P.C.,<br><br>                       Defendants. | **Case No. 23-cv-149**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, JOHN DOE, by and through his undersigned counsel, the LEGAL ACTION CENTER, hereby states his Complaint against defendants, AZA LEFKOWITZ, M.D., and ADVANCED DERMATOLOGY, P.C., as follows based upon personal knowledge and information and belief:

## PRELIMINARY STATEMENT

1. Plaintiff John Doe ("Mr. Doe") brings this action against Defendants Aza Lefkowitz, M.D., ("Dr. Lefkowitz") and Advanced Dermatology, P.C., ("Advanced Dermatology") to seek redress for their discriminatory refusal to treat Mr. Doe at his scheduled appointment because he has human immunodeficiency virus ("HIV"). Defendants' exclusion of Mr. Doe on the basis of his disability violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.*, and the New York City Human Rights Law, New York City Administrative Code § 8-107.

2. As redress for Defendants' discriminatory conduct and for the resulting loss of expected contractual benefit and emotional and psychological harm Mr. Doe suffered, Mr. Doe seeks compensatory damages, nominal damages, and attorneys' fees and costs.

## THE PARTIES

3. Plaintiff JOHN DOE brings this action and is an individual residing in Queens, New York. Mr. Doe was diagnosed with HIV in 2000. Mr. Doe's impairment, HIV, substantially limits his major life activities, including functions of the immune system, which is a major bodily function. Accordingly, Mr. Doe has a disability within the meaning of federal, state, and city anti-discrimination laws.

4. John Doe is identified by pseudonym to protect him from any stigma, discrimination, emotional distress, and hardship that could result from publicly disclosing his identity and HIV-positive status. A motion on behalf of John Doe for leave to proceed under pseudonym will be filed following the filing of this complaint.

5. Defendant AZA LEFKOWITZ, M.D., is a dermatologist and Mohs surgeon affiliated with Defendant Advanced Dermatology, P.C. Upon information and belief, Dr. Lefkowitz's primary work address is 58-47 188th St., Fresh Meadows, NY 11365.

6. Defendant ADVANCED DERMATOLOGY, P.C., is, upon information and belief, a professional service corporation, formed pursuant to the laws of the State of New York, and through which affiliated doctors provide medical services. Advanced Dermatology has offices in New York, New Jersey, Pennsylvania, and Connecticut. Advanced Dermatology has an office located at 58-47 188th St., Fresh Meadows, NY 11365.

7. Upon information and belief, at all times relevant to this complaint, Defendant Advanced Dermatology received federal financial assistance, including Medicare and/or Medicaid reimbursements, as payment for dermatology services Defendant rendered to certain individuals.

8. Upon information and belief, Defendant Advanced Dermatology agreed to receive funds from the federal government in exchange for promising to refrain from discriminating against otherwise qualified individuals with a disability ("the Contract").

9. Upon information and belief, the federal government has substantially performed its obligations under the Contract, including reimbursements for Medicare, and was willing and able to perform its remaining obligations.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and city law.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Queens, New York within the Eastern District of New York.

## STATEMENT OF FACTS

12. Mr. Doe is a seventy-four-year-old man who is living with HIV.

13. Mr. Doe takes Genvoya to treat his HIV. At all times relevant to this action, Mr. Doe's viral load was undetectable.

14. On or about January 13, 2020, Mr. Doe visited the Fresh Meadows office of Advanced Dermatology, located at 58-47 188th St., Fresh Meadows, NY 11365, for a Mohs surgery to remove cancerous tissue from his face.

15. Mr. Doe took time to travel to and attend the January 13, 2020 appointment.

16. Dr. Lefkowitz, who is certified in Mohs surgery, was Mr. Doe's attending surgeon.

17. At the time of his scheduled appointment, Mr. Doe was in the operating room and prepared for surgery. Right before Dr. Lefkowitz was going to begin the surgery, he read over Mr. Doe's medical history and stated to Mr. Doe, "you have HIV." Mr. Doe confirmed that he had been diagnosed with HIV.

18. On learning that Mr. Doe has HIV, Dr. Lefkowitz told Mr. Doe that he could not treat him that day.

19. Dr. Lefkowitz wrote in Mr. Doe's medical record that "[patients with] infection such as this had to be passed through cryostat separately, preferably on [a] day reserved for them (This primarily for safety of technician..)." Dr. Lefkowitz also wrote in Mr. Doe's medical record that his refusal to treat Mr. Doe at Mr. Doe's scheduled appointment was based on what he "had always assumed."

20. After leaving the operating room, Mr. Doe was so humiliated and embarrassed that he called his wife. Mr. Doe's wife was shocked and upset about Defendants' treatment of Mr. Doe. She drove to the Fresh Meadows office to support Mr. Doe.

21. Mr. Doe discussed the requirement that he be treated on a separate day with an administrator at the Fresh Meadows office. The administrator told Mr. Doe that when

Defendants know that a patient has a certain disease, they usually schedule them to come in at the end of the day or on a different day.

22. According to Dr. Lefkowitz's medical notes, after refusing to treat Mr. Doe during his scheduled appointment, Dr. Lefkowitz called the senior technician who said that Mr. Doe could be treated on a separate day, or at the end of the day.

23. Dr. Lefkowitz then told Mr. Doe that he could come back to the office for the procedure at the end of the day, after all the other patients had been treated.

24. Mr. Doe left the Fresh Meadows office of Advanced Dermatology without receiving the Mohs surgery.

25. Since his HIV diagnosis and prior to his January 13, 2020 visit to Advanced Dermatology, Mr. Doe had several Mohs surgeries at other medical offices and had never been asked to come on a separate day or for the last appointment of the day.

26. After the January 13, 2020 visit to Advanced Dermatology, Mr. Doe searched for a new provider and had the Mohs surgery completed at a different dermatology office on or about June 26, 2020. Mr. Doe again took time to travel to and attend surgery.

27. Regulations issued by the Occupational Safety and Health Administration (OSHA), a division of the U.S. Department of Labor, require employers, including doctor's offices and their staff, to observe "universal precautions" in settings where employees risk occupational exposure to blood-borne pathogens. 29 C.F.R. § 1910.1030(c) and (d).

28. Universal precautions, first introduced in the mid-1980s, are practices that apply to all patient care, regardless of a patient's suspected or confirmed infection status, and require that the blood and certain body fluids of all patients be considered potentially infectious for HIV,

Hepatitis B, and other bloodborne pathogens. Centers for Disease Control and Prevention, *Perspectives in Disease Prevention and Health Promotion Update: Universal Precautions for Prevention of Transmission of Human Immunodeficiency Virus, Hepatitis B Virus, and Other Bloodborne Pathogens in Health-Care Settings* (June 24, 1988), https://www.cdc.gov/mmwr/preview/mmwrhtml/00000039.htm.

29. Universal precautions prevent the transmission of infections between patients, healthcare personnel, and the environment. *See* Centers for Disease Control and Prevention, *CDC's Core Infection Prevention and Control Practices for Safe Healthcare Delivery in All Settings* (Nov. 29, 2022), https://www.cdc.gov/infectioncontrol/guidelines/core-practices/index.html. If universal precautions are not followed, health care workers risk the spread of infection, whether the presence of a bloodborne infection is known or unknown.

30. New York state regulations require licensed health care facilities, including Advanced Dermatology, to train staff on infection prevention and control, as well as enforce the standard use of precautions. N.Y. Comp. Codes R. & Regs. tit. 10, § 400.20.

31. New York law requires all doctors practicing in the state to complete training on proper infection control every four years. N.Y. Pub. Health Law § 239.

32. Defendants knew that there is no medical or scientific basis from which to require patients who have HIV to attend appointments on specific days or at the end of the day.

33. Defendants knew that using universal precautions would address any risk posed by their patients' known or unknown bloodborne infections and knew that they did not need to treat Mr. Doe differently or unequally.

34. Defendants' refusal to treat Mr. Doe at his scheduled appointment, and insistence on segregating his care, constituted discriminatory treatment on the basis of disability.

35. Defendants' wrongful and intentional discrimination against Mr. Doe on the basis of disability is reflected in the Defendants' failure to adopt and implement universal precautions and Defendants' policy and custom of segregating patients with known bloodborne infections.

36. Defendants' discriminatory treatment of Mr. Doe directly and proximately caused him great embarrassment, shame, humiliation, sadness, and anger. Defendants' actions directly and proximately caused Mr. Doe to reexperience trauma that occurred when he was first diagnosed with HIV and doctors seemed afraid to be around him.

37. Defendants' refusal to treat Mr. Doe at his scheduled appointment directly and proximately caused Mr. Doe to futilely travel to and from Defendants' office, caused a delay in Mr. Doe's surgery, caused Mr. Doe to have to find a new provider to complete the Mohs surgery, and caused Mr. Doe to travel to and from a medical office a second time to have the Mohs surgery completed.

### FIRST CAUSE OF ACTION
### SECTION 504 OF THE REHABILITATION ACT
### AS TO DEFENDANT ADVANCED DERMATOLOGY

38. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

39. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

40. At all times relevant to this action, Plaintiff has had HIV, an impairment that has substantially limited his major life activity of immune function, which is a bodily function. Therefore, Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(20)(B).

41. At all times relevant to this action, Plaintiff has been an "otherwise qualified individual with a disability" because he was qualified to receive the medical services he sought from Defendants. 29 U.S.C. § 794(a).

42. At all times relevant to this action, Defendant Advanced Dermatology was a program that received federal financial assistance, including Medicare reimbursements, pursuant to the Rehabilitation Act. 29 U.S.C § 794(b).

43. At all times relevant to this action, Mr. Doe was a third-party beneficiary to the Contract between the federal government and Defendant Advanced Dermatology conditioning the grant of federal funds on Defendant's promise not to discriminate solely by reason of disability.

44. Defendant Advanced Dermatology discriminated against Plaintiff, solely by reason of disability, by denying him equal access to its services and segregating his care, in violation of the Rehabilitation Act and its implementing regulations. 29 U.S.C. § 794 and 45 C.F.R. § 84.4.

45. Through its actions, Defendant Advanced Dermatology violated Mr. Doe's rights, including by:

    a. Failing to afford Plaintiff a benefit or service equal to that afforded to others, in violation of 29 U.S.C. § 794 and 45 C.F.R. § 84.4(b)(1)(ii);

    b. Providing an unnecessary different and separate service to Plaintiff, in violation of 29 U.S.C. § 794 and 45 C.F.R. §§ 84.4(b)(1)(iv) and (b)(3);

    c. Utilizing methods of administration that subjected Plaintiff to discrimination, in violation of 29 U.S.C. § 794 and 45 C.F.R. § 84.4(b)(4); and

    d. Otherwise limiting Plaintiff's enjoyment of the rights, privileges, advantages, and opportunities enjoyed by others, in violation of 794 and 45 C.F.R. § 84.4(b)(1)(vii).

46. When Plaintiff scheduled, prepared for, and arrived for his medical care, he expected to be provided services at his appointment time, in accordance with long-standing required universal precautions, and in the same manner as other patients receiving similar care from Defendant Advanced Dermatology. Defendant denied Plaintiff these expectation interests by failing to treat him at his scheduled appointment solely by reason of his disability.

47. Defendant Advanced Dermatology's policy and practice of disregarding medical standards, including universal precautions, and unequal treatment of plaintiff constituted deliberate indifference. Defendant knew that harm to Plaintiff's federally protected rights was substantially likely and deliberately failed to protect those rights.

48. Plaintiff is entitled to compensatory damages for the loss he sustained as a result of Defendant's discriminatory conduct, pursuant to the Rehabilitation Act. 29 U.S.C. § 794a.

49. In the alternative, Plaintiff is entitled to nominal damages in recognition of the injury he suffered as a result of Defendant's discriminatory conduct, pursuant to the Rehabilitation Act. 29 U.S.C. § 794a.

50. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794a, and/or common law.

## SECOND CAUSE OF ACTION
## SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT
## AS TO DEFENDANT ADVANCED DERMATOLOGY

51. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

52. Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557") states, "an individual shall not, on the ground prohibited under . . . [section 504 of the Rehabilitation Act of 1973,] section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . "42 U.S.C. § 18116(a).

53. At all times relevant to this action, Plaintiff has had HIV, an impairment that has substantially limited his major life activity of immune function, which is a bodily function. Therefore, Plaintiff is a qualified individual with a disability within the meaning of Section 1557. 42 U.S.C. § 18116(a).

54. At all times relevant to this action, Defendant Advanced Dermatology received federal financial assistance, including Medicare reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant Advanced Dermatology is a health program or activity receiving federal financial assistance pursuant to Section 1557. 42 U.S.C. § 18116(a).

55. At all times relevant to this action, Mr. Doe was a third-party beneficiary to the Contract between the federal government and Defendant Advanced Dermatology conditioning

the grant of federal funds on Defendant's promise not to discriminate solely by reason of disability.

56. Defendant Advanced Dermatology discriminated against Plaintiff, solely by reason of disability, by denying him equal access to its services and segregating his care, in violation of Section 1557. 42 U.S.C. § 18116(a).

57. When Plaintiff scheduled, prepared for, and arrived for his medical care, he expected to be provided services at his appointment time, in accordance with long-standing required universal precautions, and in the same manner as other patients receiving similar care from Defendant Advanced Dermatology. Defendant denied Plaintiff these expectation interests by failing to treat him at his scheduled appointment solely by reason of his disability.

58. Defendant Advanced Dermatology's policy and practice of disregarding medical standards, including universal precautions, and unequal treatment of Plaintiff, constituted deliberate indifference. Defendant knew that harm to Plaintiff's federally protected rights was substantially likely and deliberately failed to protect those rights.

59. Plaintiff is entitled to compensatory damages for the loss he sustained as a result of Defendant's discriminatory conduct, pursuant to Section 1557. 42 U.S.C. § 18116(a).

60. In the alternative, Plaintiff is entitled to nominal damages in recognition of the injury he suffered as a result of Defendant's discriminatory conduct, pursuant to Section 1557. 42 U.S.C. § 18116(a).

61. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to Section 1557, 42 U.S.C. § 18116(a), and/or common law.

## THIRD CAUSE OF ACTION
## NEW YORK STATE HUMAN RIGHTS LAW
## AS TO BOTH DEFENDANTS

62.  Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

63.  The New York State Human Rights Law (NYSHRL), prohibits as unlawful discrimination, "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of . . . disability . . . or that the patronage or custom thereat of any person of or purporting to . . . having a disability is unwelcome, objectionable or not acceptable, desired or solicited." N.Y. Exec. Law § 296(2)(a).

64.  At all times relevant to this action, Plaintiff has been diagnosed with HIV, a physical and medical impairment that prevents the exercise of the normal bodily function of immune function and is demonstrable by laboratory diagnostic techniques. Therefore, Plaintiff is an individual with a disability within the meaning of the NYSHRL. N.Y. Exec. Law § 292(21).

65.  At all times relevant to this action, Defendant Dr. Lefkowitz was an owner, lessee, proprietor, manager, superintendent, agent or employee of a public accommodation. N.Y. Exec. Law § 296(2)(a).

66.  At all times relevant to this action, Defendant Advanced Dermatology was a public accommodation within the meaning of the NYSHRL. N.Y. Exec. Law § 292(9).

67. Defendants discriminated against Plaintiff by withholding and denying him the advantages of their public accommodation because of his disability, in violation of the NYSHRL. N.Y. Exec. Law § 296(2)(a).

68. Plaintiff is entitled to compensatory damages for the mental anguish and humiliation sustained as a result of Defendants' discriminatory conduct pursuant to N.Y. Exec. Law § 297(9).

69. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to N.Y. Exec. Law § 297(10).

## FOURTH CAUSE OF ACTION
## NEW YORK CITY HUMAN RIGHTS LAW
## AS TO BOTH DEFENDANTS

70. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

71. The New York City Human Rights Law (NYCHRL), prohibits "any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation…[b]ecause of any person's actual or perceived . . . disability . . . directly or indirectly…[t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation . . ." N.Y.C. Admin. Code § 8-107(4).

72. At all times relevant to this action, Plaintiff has been diagnosed with HIV, a physical and medical impairment of the immune system. Therefore, Plaintiff is an individual with a disability within the meaning of the NYCHRL. N.Y.C. Admin. Code § 8-102.

73. At all times relevant to this action, Defendant Dr. Lefkowitz was an owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of a public accommodation. N.Y.C. Admin. Code § 8-107(4).

74. At all times relevant to this action, Defendant Advanced Dermatology was a public accommodation within the meaning of the NYCHRL. N.Y.C. Admin. Code § 8-102.

75. Defendants discriminated against Plaintiff by withholding and denying him the full and equal enjoyment of the services, on equal terms and conditions, of their public accommodation because of his disability, in violation of the NYCHRL. N.Y.C. Admin. Code § 8-107(4).

76. Plaintiff is therefore entitled to compensatory damages for the emotional pain, suffering, inconvenience, and mental anguish sustained as a result of Defendants' discriminatory conduct pursuant to N.Y.C. Admin. Code § 8-502(a).

77. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to N.Y.C. Admin. Code § 8-502(g).

**Prayer for Relief**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

1. Compensatory damages, including but not limited to out of pocket and expectation damages, pursuant to Section 504 of the Rehabilitation Act of 1973 and Section 1557 of the Patient Protection and Affordable Care Act;

2. Compensatory damages, including but not limited to emotional distress damages, under the New York State Human Rights Law and the New York City Human Rights Law;

3. Nominal damages pursuant to Section 504 of the Rehabilitation Act of 1973 and Section 1557 of the Patient Protection and Affordable Care Act;

4. Reasonable costs and attorneys' fees pursuant to Section 504 of the Rehabilitation Act of 1973, Section 1557 of the Patient Protection and Affordable Care Act, the New York State Human Rights Law, and the New York City Human Rights Law; and

5. Any and all other relief that this Court finds necessary and appropriate.

**JURY DEMAND**

Plaintiff demands trial by jury for all the issues a jury properly may decide, and for all the requested relief that a jury may award.

Dated:   New York, New York
         January 10, 2023

        Respectfully submitted,

        **LEGAL ACTION CENTER**

        By:  */s/ Diane Johnston*
             Diane Johnston

            */s/ Jennifer Sinton*
            Jennifer Sinton

        225 Varick St., 4th Floor
        New York, New York 10014
        Tel: (212) 243-1313
        Email: djohnston@lac.org
        Email: jsinton@lac.org

        *Counsel for Plaintiff*